## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HANNAH SAYRE and CRYSTAL MILLER, Individually and For Others Similarly Situated<br><br>v.<br><br>GENESIS HC LLC f/k/a GENESIS HEALTHCARE CORPORATION | **Case No.** _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Hannah Sayre (Sayre) and Crystal Miller (Miller) (collectively Plaintiffs) bring this collective action to recover unpaid wages and other damages from Genesis HC LLC f/k/a Genesis HealthCare Corporation (Genesis).

2. Sayre worked for Genesis as a Licensed Practical Nurse (LPN).

3. Miller works for Genesis as a Certified Nursing Assistant (CNA).

4. Like the other Patient Care Employees (defined below), Plaintiffs regularly work more than 40 hours a workweek.

5. But Genesis does not pay them for all hours worked.

6. Instead, Genesis automatically deducts 30 minutes a workday from the Patient Care Employees' hours for so called "meal breaks" (Genesis's "meal auto-deduction policy").

7. Plaintiffs and the other Patient Care Employees are thus not paid for that time.

8. But Genesis fails to provide or make available *bona fide* meal breaks to Plaintiffs and the other Patient Care Employees.

9. Rather, Genesis requires them to remain on duty and working throughout their shifts and subjects them to interruptions during their unpaid, off the clock "meal breaks."

10. Additionally, Genesis pays Plaintiffs and the other Patient Care Employees non-discretionary bonuses that it fails to include in their regular rates of pay for overtime purposes (Genesis's "bonus pay scheme").

11. Genesis's meal auto-deduction policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) because these policies deprive Plaintiffs and the other Patient Care Employees of premium overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has general personal jurisdiction over Genesis because Genesis is a domestic limited liability company and maintains its principal place of business in Kennett Square, Pennsylvania.

14. Venue is proper because Genesis maintains its principal place of business in Kennett Square, Pennsylvania, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

15. Sayre worked for Genesis as an LPN from approximately August 2022 until July 2024.

16. Miller has worked for Genesis as a CNA since June 2003.

17. Throughout their employment, Genesis has classified Plaintiffs as non-exempt and paid them by the hour.

18. And, throughout their employment, Genesis subjected Plaintiffs to its meal auto-deduction policy and bonus scheme.

19. Sayre's written consent is attached as **Exhibit 1**.

20. Miller's written consent is attached as **Exhibit 2**.

21. Plaintiffs bring this collective action on behalf of themselves and other similarly situated hourly employees Genesis subjected to its meal auto-deduction policy and bonus pay scheme.

22. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Genesis employees who experienced a meal deduction and/or were paid a bonus at any time during the past 3 years through final resolution of this matter (Patient Care Employees).**

23. Genesis is a Pennsylvania limited liability company that maintains its headquarters in Kennett Square, Pennsylvania.

24. Genesis may be served with process through registered agent: **Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.**

### COVERAGE UNDER THE FLSA

25. At all relevant times, Genesis was an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, Genesis was an enterprise within the meaning of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, Genesis was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as computers, cellphones, personal protective equipment, etc., that have been moved in or produced for commerce.

28. At all relevant times, Genesis has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, Genesis has employed Plaintiffs and the other Patient Care Employees as "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30.     At all relevant times, Plaintiffs and the Other Patient Care Employees have been engaged in commerce or in the production of goods for commerce, or otherwise handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as medical tools, personal protective equipment, computers, and cell phones.

**FACTS**

31.     Genesis touts itself as "one of the largest rehabilitation therapy companies in the nation . . . offer[ing] a variety of services in nearly 200 centers across 17 states [including] Specialized Alzheimer's care, orthopedic rehabilitation, ventilator care, dialysis care and Assisted/Senior Living services."[1]

32.     Genesis states one of its "Core Values" is that "[its] employees are the vital link between Genesis HealthCare and our patients and the residents."[2]

33.     To that end, Genesis advertises available jobs at its facilities across the country[3]:



34.     It invites candidates to "[j]oin Genesis HealthCare and become part of a team that values your well-being and success" and advertises approximately 1,650 open positions.[4]

---

[1] https://www.genesishcc.com/ (last visited February 12, 2025).
[2] https://www.genesiscareers.jobs/genesishcc/careers-home (last visited February 12, 2025).
[3] https://www.genesiscareers.jobs/genesishcc/careers-home (last visited February 12, 2025).
[4] https://www.genesiscareers.jobs/genesishcc/benefits-and-perks; *and*
https://www.genesiscareers.jobs/genesishcc/jobs (last visited February 12, 2025).

35. Genesis employs employees, including Plaintiffs and the other Patient Care Employees, to provide and facilitate medical care services to its residents.

36. Genesis classifies these employees as non-exempt and pays them by the hour.

37. While exact job titles and job duties may differ, these employees are subject to the same or similar policies and pay practices for similar work.

38. For example, Sayre worked for Genesis as an LPN in its Brightwood Center[5] in Follansbee, West Virginia from approximately August 2022 until July 2024.

39. And Miller has worked for Genesis as a CNA in its Brightwood Center in Follansbee, West Virginia since approximately June 2003.

40. As an LPN, Sayre's job duties included changing wound dressings, distributing medications, monitoring and measuring residents' vital signs, and implementing the patient care advised by residents' other nurses and doctors.

41. As a CNA, Miller's job duties include changing wound dressings, bathing, grooming, and feeding residents, assisting residents' movement, and implementing the directions of nurses and doctors.

42. Throughout their employment, Genesis has classified Plaintiffs as non-exempt and paid her by the hour.

43. Specifically, Genesis paid Sayre approximately $32 an hour and paid Miller approximately $26 an hour.

44. Gensis paid Plaintiffs' wages through GHC Payroll, LLC:

---

[5] https://www.genesishcc.com/brightwoodwv (last visited February 12, 2025).

**GHC Payroll, LLC**
Payroll Account - Disbursements
101 East State Street
Kennett Square PA  19348

45. Plaintiffs typically work 12 or 16 hours a day "on the clock" and 3 to 5 days a week.

46. Throughout their employment, Genesis has subjected Plaintiffs to its meal auto-deduction policy.

47. Specifically, Genesis automatically deducts 30 minutes each workday from Plaintiffs recorded work time for so-called "meal breaks" regardless of whether they actually receive or take a *bona fide* meal break.

48. Thus, Genesis does not pay Plaintiffs for this time.

49. And, throughout their employment, Plaintiffs have not actually received *bona fide* meal breaks.

50. Instead, Genesis's productivity requirements and Plaintiffs' patient care responsibilities force them to perform compensable work throughout their shifts for Genesis's predominant benefit, including during their so-called "meal breaks."

51. Plaintiffs and the other Patient Care Employees perform their jobs under Genesis's supervision, using the same materials, equipment, and technology, which is approved and supplied by Genesis.

52. Genesis requires Plaintiffs and the other Patient Care Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

53. At the end of each pay period, Plaintiffs and the other Patient Care Employees receive wages from Genesis that were determined by common systems and methods that Genesis selects and controls.

54. Genesis requires Plaintiffs and the other Patient Care Employees, to record their "on the clock" hours worked using Genesis's timekeeping system.

55. Thus, just as Genesis's records reflect the number of hours Plaintiffs worked "on the clock" each workweek, Genesis also has records of the number of hours the other Patient Care Employees worked "on the clock" each workweek.

56. But, like Plaintiffs, Genesis fails to pay the other Patient Care Employees for all their hours worked, including overtime hours.

57. Genesis uniformly subjects its other Patient Care Employees to the same illegal meal auto-deduction policy it imposes on Plaintiffs.

58. Specifically, just as with Plaintiffs, Genesis automatically deducts at least 30 minutes a workday from the other Patient Care Employees' hours for so-called "meal breaks."

59. Genesis automatically deducts this time regardless of whether the other Patient Care Employees actually receive *bona fide* uninterrupted, 30-minute meal breaks.

60. Genesis simply assumes the other Patient Care Employees receive *bona fide* meal breaks each workday.

61. But, like Plaintiffs, the other Patient Care Employees do not actually receive *bona fide* meal breaks.

62. Instead, Genesis requires them to remain on duty performing compensable work throughout their shifts for Genesis's predominant benefit, including during their unpaid "meal breaks."

63. And, like Plaintiffs, the other Patient Care Employees are frequently subjected to work interruptions during their unpaid "meal breaks."

64. Because of these work interruptions, Plaintiffs and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal breaks."

65. In other words, Plaintiffs and the other Patient Care Employees are not relieved of their patient care duties during their unpaid "meal breaks."

66. Rather, during their unpaid "meal breaks," Plaintiffs and the other Patient Care Employees are forced to remain on duty, performing their regular duties.

67. Thus, Plaintiffs and the other Patient Care Employees routinely spend their unpaid "meal breaks" performing work for Genesis's—not their own—predominant benefit.

68. This unpaid time is compensable under the FLSA because Genesis knew or should have known: (1) Plaintiffs and the other Patient Care Employees were performing work during their "meal breaks"; (2) they were interrupted with work duties during any attempted "meal break"; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their "meal breaks" due to work demands or requirements; (5) their unpaid "meal breaks" were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid "meal breaks" because of work interruptions; (7) they remained on Genesis's premises or under Genesis's supervision during their unpaid "meal breaks"; and/or (8) they spent their unpaid "meal breaks" performing their regular patient care duties for Genesis's predominant benefit.

69. Genesis fails to exercise its duty as Plaintiffs' and the other Patient Care Employees' employer to ensure these employees are not performing work that Genesis does not want performed during their unpaid "meal breaks."

70. And Genesis knows, should know, or recklessly disregards whether Plaintiffs and the other Patient Care Employees routinely perform work "off the clock" during their unpaid "meal breaks."

71. Indeed, Plaintiffs and other Patient Care Employees complained to their supervisors, HR, and/or Genesis management about being forced to work during their unpaid "meal breaks."

72. Thus, Genesis required, requested, suffered, or permitted Plaintiffs and the other Patient Care Employees to work for its predominant benefit during their unpaid "meal breaks."

73. Despite accepting the benefits, Genesis does not pay Plaintiffs and the other Patient Care Employees for the compensable work they perform during their automatically deducted "meal breaks."

74. Additionally, Genesis pays Plaintiffs and the other Patient Care Employees non-discretionary bonuses, including sign on bonuses, supplemental staffing bonuses, and wound performance bonuses, that it fails to include in their regular rates of pay for overtime purposes.

75. For example, during the pay period ending August 26, 2023, Miller received a "Wound Performance Bonus" that Genesis failed to include in her regular rate of pay for overtime purposes:

| Description | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|
| Wound Performance Bonus | | | 50.00 | | 100.00 |
| Bereavement Time | | | 0.00 | 24.00 | 624.00 |
| Holiday | | | 0.00 | 8.00 | 208.00 |
| Orientation-NP | | | 0.00 | 7.50 | 195.00 |
| Orientation | | | 0.00 | 19.00 | 494.00 |
| Overtime | | | 0.00 | 15.87 | 618.93 |
| Regular | | | 0.00 | 270.46 | 7,031.96 |
| **TOTAL:** | | 0.00 | 50.00 | 344.83 | 9,271.89 |

| Description | Rate | Current Hours | Earnings | YTD Hours | Earnings |
|---|---|---|---|---|---|
| Regular | 26.000 | 80.00 | 2,080.00 | 270.46 | 7,031.96 |
| Overtime | 39.000 | 9.12 | 355.68 | 15.87 | 618.93 |
| Bereavement Time | | | 0.00 | 24.00 | 624.00 |
| Holiday | | | 0.00 | 8.00 | 208.00 |
| Orientation-NP | | | 0.00 | 7.50 | 195.00 |
| Orientation | | | 0.00 | 19.00 | 494.00 |
| Wound Performance Bonus | | | 0.00 | | 100.00 |
| **TOTAL:** | | 89.12 | 2,435.68 | 344.83 | 9,271.89 |

76. Thus, Genesis fails to pay Plaintiffs and the other Patient Care Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

77. When Plaintiffs and the other Patient Care Employees work more than 40 hours in a workweek, Genesis does not pay them overtime wages—based on all remuneration—for all hours worked in excess of 40 a workweek, in willful violation of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

78. Plaintiffs brings their claims as a collective action under § 216(b) of the FLSA.

79. The Patient Care Employees are uniformly victimized by Genesis's meal auto-deduction policy and bonus pay scheme.

80. Other Patient Care Employees worked with Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to Genesis's same or similar meal auto-deduction policy and/or bonus pay scheme.

81. Based on their experiences with Genesis, Plaintiffs are aware Genesis's meal auto-deduction policy and bonus pay scheme were imposed on other Patient Care Employees.

82. The Patient Care Employees are similarly situated in the most relevant respects.

83. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

84. Therefore, the specific job titles or job locations of the Patient Care Employees do not prevent collective treatment.

85. Rather, the Patient Care Employees are held together by Genesis's meal auto-deduction policy and bonus pay scheme, which systematically deprive them of wages, including overtime wages.

86. The back wages owed to Plaintiffs and the other Patient Care Employees can be calculated using same formula applied to the same records.

87. Plaintiffs' experiences are therefore typical of the experiences of the other Patient Care Employees.

88. Plaintiffs have no interest contrary to, or in conflict with, the other Patient Care Employees that would prevent collective treatment.

89. Like each Patient Care Employee, Plaintiffs have an interest in obtaining the unpaid wages owed under federal law.

90. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.

91. Absent this collective action, many Patient Care Employees will not obtain redress for their injuries, and Genesis will reap the unjust benefits of violating the FLSA.

92. Further, even if some of the Patient Care Employees could afford individual litigation against Genesis, it would be unduly burdensome to the judicial system.

93. Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and Genesis.

94. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

95. Among the common questions of law and fact are:

   a. Whether Genesis engaged in a policy and practice of deducting 30 minutes from the Patient Care Employees' hours for "meal breaks" that were not *bona fide*, continuous, and uninterrupted;

   b. Whether Genesis's meal auto-deduction policy deprived the Patient Care Employees of pay for time worked during meal breaks that were not *bona fide*, continuous, and uninterrupted;

   c. Whether Genesis paid non-discretionary bonuses to the Patient Care Employees;

  d. Whether Genesis failed to pay the Patient Care Employees overtime compensation at the required rates, based on all remuneration, for all hours worked in excess of 40 a workweek;

  e. Whether Genesis knew, or had reason to know, the Patient Care Employees were required, requested, suffered, or permitted, to work "off the clock";

  f. Whether Genesis's decision not to pay the Patient Care Employees overtime wages at the required rate for all overtime hours worked was made in good faith;

  g. Whether Genesis's violations of the FLSA were willful.

96. Plaintiffs and the other Patient Care Employees sustained damages arising out of Genesis's meal auto-deduction policy and bonus pay scheme.

97. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Genesis's records, and there is no detraction from the common nucleus of liability facts.

98. Therefore, the issue of damages does not preclude collective treatment.

99. Genesis's meal auto-deduction policy and bonus pay scheme deprived Plaintiffs and the other Patient Care Employees of wages, including overtime wages, which they are owed under the FLSA.

100. There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

101. This notice should be sent to the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

102. The Patient Care Employees are known to Genesis, are readily identifiable, and can be located through Genesis's business and personnel records.

### GENESIS'S VIOLATIONS WERE WILLFUL

103. Genesis knew it was subject to the FLSA's overtime provisions.

104. Genesis knew the FLSA required it to pay non-exempt employees, including Plaintiffs and the other Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

105. Genesis knew Plaintiffs and the other Patient Care Employees were non-exempt employees entitled to overtime wages.

106. Genesis knew it paid Plaintiffs and the other Patient Care Employees by the hour.

107. Genesis knew Plaintiffs and the other Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Genesis required them to record their "on the clock" hours using its timeclock system.

108. Genesis knew the FLSA requires it to pay employees, including Plaintiffs and the other Patient Care Employees, for all hours worked.

109. Genesis knew that, as Plaintiffs' and the other Patient Care Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Genesis did not want performed.

110. Genesis knew Plaintiffs and the other Patient Care Employees regularly work "off the clock" during their "meal breaks" performing their regular patient care job duties for Genesis's predominant benefit.

111. Genesis knew it failed to provide or make available *bona fide*, uninterrupted meal breaks to Plaintiffs and the other Patient Care Employees.

13

112. Genesis knew Plaintiffs and the other Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

113. Indeed, Plaintiffs and the other Patient Care Employees complained to Genesis's management, HR, and/or their supervisors about being forced to work during their unpaid "meal breaks."

114. Genesis knew it requested, suffered, permitted, or allowed Plaintiffs and the other Patient Care Employees to work for its predominant benefit during their unpaid "meal breaks."

115. Genesis's decision to automatically deduct at least 30 minutes a workday from Plaintiffs' and the other Patient Care Employees' hours for "meal breaks" was neither reasonable, nor was it made in good faith.

116. Genesis knew it paid Plaintiffs and the other Patient Care Employees non-discretionary bonuses.

117. And Genesis knew these bonuses are required to be included in Plaintiffs' and the other Patient Care Employees' regular rates of pay for overtime purposes.

118. Genesis knew it does not include these non-discretionary bonuses in Plaintiffs' and the other Patient Care Employees' regular rates of pay for overtime purposes.

119. Genesis's failure to pay Plaintiffs and the other Patient Care Employees premium overtime wages at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was its decision made in good faith.

120. Genesis knowingly, willfully, and/or in reckless disregard carried out its meal auto-deduction policy and bonus pay scheme that deprived Plaintiffs and the other Patient Care Employees of overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 in a workweek.

121. Indeed, Genesis (and/or related entities) has previously been sued on numerous occasions for violations of the FLSA, including for the same or similar meal auto-deduction policy and/or bonus pay scheme at issue here. *See e.g.*, *Harvey et al. v. GHC LLC et al.*, 1:2014-cv-02079 (N.D. Ohio); *Novosad v. Crestview North, Inc. et al.*, 2:2009-cv-04946 (E.D. Pa.); *Symczyk v. Genesis Healthcare Corporation et al.*, 1:2009-cv-05782 (E.D. Pa.); *Dennis v. Genesis Healthcare Corporation*, 3:2011-cv-01997 (M.D. Pa.); *Swann v. Genesis Healthcare LLC*, 6:2016-cv-01733 (M.D. Fla.); *Molina et al. v. Genesis Healthcare, LLC et al.*, 3:2019-cv-00516 (M.D. Pa.).

122. Genesis knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

123. Plaintiffs bring their FLSA claim as a collective action under 29 U.S.C. § 216(b).

124. Genesis violated the FLSA by employing employees such as Plaintiffs and the other Patient Care Employees in an enterprise engaged in commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their hours worked in excess of 40 per workweek at rates not less than 1.5 times the regular rates of pay, based on all remuneration.

125. Plaintiffs and the other Patient Care Employees have been harmed as a direct and proximate result of Genesis's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Genesis derived a direct and substantial benefit.

126. Genesis's failure to pay Plaintiffs and the other Patient Care Employees overtime compensation at the required premium rate was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate made in good faith.

127. Genesis knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Plaintiffs and the other Patient Care Employees overtime compensation at the premium rate the FLSA requires.

128. Accordingly, Plaintiffs and the other Patient Care Employees are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay—based on all remuneration—plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

129. Plaintiffs demand a trial by jury on all Counts.

## RELIEF SOUGHT

Plaintiffs, individually and on behalf of the other Patient Care Employees, seek the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order pursuant to Section 16(b) of the FLSA finding Genesis liable for unpaid overtime wages due to Plaintiffs and the Patient Care Employees, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against Genesis awarding Plaintiffs and the other Patient Care Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: March 13, 2025. | Respectfully submitted, |

**THE WEITZ FIRM, LLC**

By: */s/ Eric H. Weitz*
Eric H. Weitz
PA ID No. 65514
1515 Market Street, Ste. 1100
Philadelphia, Pennsylvania 19102
Phone: (267) 692-8318
Fax: (215) 689-0875
eric.weitz@theweitzfirm.com

Michael A. Josephson
PA ID No. 308410
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFFS AND THE PATIENT CARE EMPLOYEES**